## MARIE SCHENCK'S CASE.

Suffolk.    February 3, 1936. — February 25, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Workmen's Compensation Act,* Amount of compensation, Findings by Industrial Accident Board.

Under G. L. (Ter. Ed.) c. 152, § 36 (1), an employee, whose index finger on his major hand was severed in the middle phalange whereby the remainder of that phalange became useless, was entitled to specific compensation for twenty weeks.

In proceedings under the workmen's compensation act, findings by the reviewing board which were warranted by a report, given to it under G. L. (Ter. Ed.) c. 152. § 9 by an impartial physician, determine the facts which form the basis for a decree in the Superior Court regardless of whether findings of the same import by a single member were warranted by the evidence before him.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of findings and a decision by the Industrial Accident Board.

The insurer appealed from a decree entered by order of *Fosdick*, J., in accordance with the findings and decision.

*E. W. Sawyer & S. S. Bean*, for the insurer, submitted a brief.

No argument nor brief for the claimant.

FIELD, J.   This is a workmen's compensation case. G. L. (Ter. Ed.) c. 152.   Previous proceedings in regard to this employee's compensation, as shown by the record, were as follows: "An agreement in regard to compensation filed with the board on February 19, 1935, gives the date of injury as December 5, 1934; the nature of injury as 'index finger of right hand injured'; the cause of accident as 'Was picking waste out of comber gears, started comber, caught finger and thumb in gears'.   Under this agreement the employee was paid compensation at the rate of $9 a week, based on an average weekly wage of $9.86, and, in addition twelve weeks specific compensation of $6.57 for loss of one and one third phalanges of index finger of right and major hand.   The employee was paid disability compensation to February 18, 1935 when she signed an agreement to discontinuance."

The question for decision by the Industrial Accident Board, as stated by the record, was "Whether further specific compensation is due."

The single member found that the employee had lost "the terminal phalange and more than half of the middle phalange of the index finger of the right hand," and that "the part that remains of the said middle phalange approaches the infinitely small, from the working standpoint, and is incapable of use as a phalange."   He ruled that the employee was entitled to eight weeks additional specific

compensation. The reviewing board affirmed and adopted the findings and decision of the single member. In the Superior Court a decree was entered in accordance with these findings and this decision. The insurer appealed.

The record does not show how the claim for further specific compensation came before the Industrial Accident Board. And it does not disclose the terms of the agreement in regard to compensation. See *Lemieux's Case*, 223 Mass. 346, 348–349. Furthermore, it does not state specifically that such agreement was approved by the board so that it became binding on the board. See G. L. (Ter. Ed.) c. 152, § 6; *Perkins's Case*, 278 Mass. 294; *Virta's Case*, 287 Mass. 602, 605. In this state of the record and in the absence of argument by the insurer that the matter of further specific compensation was not properly before the board or that an award of such further compensation was precluded by the agreement, we consider only the question argued by the insurer — whether on the findings and the evidence the employee was entitled to further specific compensation as adjudged by the decree. See *Gillard's Case*, 244 Mass. 47, 55–56; *Latherizer Corp.* v. *Department of Public Utilities*, 278 Mass. 454, 460.

By the statutory provisions dealing with specific compensation, G. L. (Ter. Ed.) c. 152, § 36, (see now St. 1935, c. 333) such compensation is to be paid for the "loss by severance of the terminal phalange . . . of any finger . . . for a period of twelve weeks" (paragraph [k]), or for the "loss by severance at or above the second joint of the index finger of the right or major hand . . . for a period of twenty weeks" (paragraph [h]). There is, however, a further provision that the "additional amounts provided for in this section in case of the loss of a particular . . . finger . . . or phalange shall also be paid for the number of weeks above specified if the injury is such that that . . . finger . . . or phalange is not lost but so injured as to be permanently incapable of use" (paragraph [1]).

The decree — in effect extending the period of compensation from twelve to twenty weeks — was required as matter of law by the findings of the reviewing board if these

findings were supported by evidence. See G. L. (Ter. Ed.) c. 152, §.11; *Lopes's Case,* 277 Mass. 581, 585. The finding as to the employee's loss by severance of "the terminal phalange and more than half of the middle phalange" of the finger, considered alone, entitled her to specific compensation for a period of twelve weeks only. But the further findings with respect to the middle phalange are express as to incapacity of the part of this phalange above the place of severance and import permanence of such incapacity. See *Floccher's Case,* 221 Mass. 54. These findings in connection with the finding of severance of the terminal phalange show permanent incapacity of the finger up to a point "at . . . the second joint." Paragraph (h). If supported by evidence these findings entitle the employee under paragraph (l) to the same compensation as she would be entitled to receive for loss of the finger by severance at the second joint — that is, specific compensation for a period of twenty weeks. This result is not precluded by the fact that a part of the finger was lost by severance and the incapacity of the rest of the finger resulted from such severance. The statute is "to be construed liberally for the protection of the injured employee." *Meley's Case,* 219 Mass. 136, 139. Clearly a finger lost by severance is incapable of use. For such loss, however, compensation is provided by paragraph (h), and duplication of compensation is prevented by the provision that paragraph (l) is applicable only when a finger is "not lost." Here the finger, as distinguished from the terminal phalange thereof (see *Ethier's Case,* 217 Mass. 511, 512), was "not lost," and the employee was not entitled to compensation under paragraph (h). It would be unreasonable to construe paragraph (l) as inapplicable to incapacity of a finger for use, if proved, resulting from a partial loss thereof by severance where, under this paragraph, such incapacity without any severance would be compensable and under paragraph (h) total loss by severance would be compensable. An intention to omit the intermediate case from provisions for compensation is not to be attributed to the Legislature. Duplication of compensation for loss by severance of the terminal phalange is pre-

vented by the provision of paragraph (k) that "no compensation shall be payable under this paragraph for the loss by severance of any phalange for the loss of which compensation is payable under any other paragraph of this section" when this paragraph is read in connection with paragraphs (h) and (l). Clearly it was not intended to provide greater compensation for incapacity for use than is provided for an equivalent loss by severance. The conclusion here reached is consistent with, if not suggested by, *Ethier's Case*, 217 Mass. 511, *Lemieux's Case*, 223 Mass. 346, and *Ramondetta's Case*, 240 Mass. 492. In *Ethier's Case*, there was a severance of a part of the terminal phalange, and incapacity for use of this phalange, but not of a finger. Compensation for incapacity for use was denied because the statute then in force (St. 1911, c. 751, Part II, § 11, as amended by St. 1913, c. 696), unlike the present statute, did not provide for compensation for incapacity for use of a phalange as distinguished from a finger. The decree was in accordance with this interpretation of the statute.

The findings of the reviewing board were supported by the evidence before it. Its findings of fact rather than those of the single member are controlling (*Norman's Case*, 278 Mass. 464, 466), and consequently it is unnecessary to decide whether the findings of the single member were supported by the evidence before him. The reviewing board had before it not only the evidence which was before the single member, but also the report of the impartial physician. See G. L. (Ter. Ed.) c. 152, §§ 9, 10; *Von Ette's Case*, 223 Mass. 56, 58; *Phillips's Case*, 278 Mass. 194, 195–196. The findings of the board as to severance were in accordance with the report of the impartial physician which, on this point, did not differ materially from the evidence before the single member. It is not questioned that the severance of the finger resulted from an injury arising out of and in the course of the employment. The finding of the board as to incapacity of the finger for use was substantially in the terms of the report of the impartial physician which, on this point, was in conflict with the evi-

dence before the single member. The board, however, could believe this report rather than the evidence before the single member. There is no merit in the contention of the insurer that the evidence did not warrant a finding that the incapacity of the finger for use resulted from the injury because there was no evidence of any injury apart from that which caused the severance of the finger. It could be found on the evidence that such incapacity resulted from the nature of the severance.

*Decree affirmed.*